**STATE of Alaska et al., Appellants,**

v.

**Susan K. WYLIE, Appellee.**

**No. 1836.**

Supreme Court of Alaska.

Nov. 23, 1973.

Gregory Papas, Asst. Atty. Gen., Norman C. Gorsuch, Deputy Atty. Gen., John E. Havelock, Atty. Gen., Juneau, Gordon E. Evans, of Davidson, Engstrom & Evans, Juneau, for appellants.

William B. Rozell of Faulkner, Banfield, Doogan, Gross & Holmes, Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and FITZGERALD, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The State of Alaska and certain officials of the state appeal from a decision of the superior court holding unconstitutional those personnel regulations of the State of Alaska which give an absolute hiring preference to persons who have resided in Alaska for at least one year. For the reasons stated herein we affirm the decision of the superior court.

Appellee Susan Wylie moved to Alaska in May, 1972, and sought state employment after successfully completing state competitive examinations for the positions of Benfit Specialist I and Social Worker II. Susan Wylie is a college graduate with more than two years experience in the field of social work. However, because she had not resided in Alaska for one year preceding her application for state employment, her application was placed on a waiting list behind all other applicants who had been residents of the state for a year or more.

Appellee Wylie brought this action in superior court seeking to enjoin the enforcement of the personnel rules in question, and to have those rules declared unconstitutional under the Alaska and United States Constitutions. The superior court concluded that the one-year durational residence requirement penalized the exercise of the federal constitutional right of interstate travel and denied residents of Alaska equal protection of the laws guaranteed by article I, section 1 of the Alaska constitution and the fourteenth amendment of the United States Constitution. The superior court granted appellee's motion for summary judgment, and from that judgment the state appeals.

Involved here are provisions of the Personnel Rules of the State of Alaska[1] which provide in pertinent part:

*Rules 4 01.0* Establishment

The Director shall establish and maintain eligible lists necessary to carry out the purpose of the personnel law and Rules.

*4 01.1* Each list shall be by class of position and shall consist of the names of all persons who have passed the required competitive examination, ranked in order of final earned rating based upon satisfactory performance in the classified service, and any credited veteran's preference *provided that Alaska residents shall be listed in rank order above non-residents on open competitive lists.* (emphasis added)

For the purposes of the Rule 4 01.1 preference, the Personnel Rules define "Alaska resident" to mean a person who has "resided in the State of Alaska for twelve months immediately prior to his making application for employment,"[2] except that

[e]stablished residence status shall not be broken by attendance at school or college while parents maintain Alaska residence, military service when a resident of Alaska at time of entry into the service, involuntary absence such as extended medical care or vacation trips, nor shall absence for any purpose serve to break the resident status for employment purposes of individuals currently living in Alaska who have maintained continuous Alaska residence for the major part of their adult lives.[3]

The effect of these personnel rules is to create two classes of resident applicants for state employment. One class consists of residents either who have lived in Alaska for at least one year immediately preceding their application for employment, or whose established residency for the pur-

---

1. These rules were promulgated pursuant to AS 39.25.010–39.25.220.

2. Rules 1 and 3 09.0 of the State of Alaska Personnel Rules.

3. Alaska Personnel Rule 3 09.3.

pose of the rules was not broken by absence from the state. The other class of applicants consists of Alaskans who have been residents in the state for less than one year preceding their application for employment. Under these rules, those who satisfy the durational residence requirement are hired in preference to those who do not, regardless of the comparative qualifications of the candidates for the employment position. The classification discriminates against new residents to the extent that old residents do not compete for state employment on a basis of parity with new residents.

As their first specification of error appellants contend that the trial court erred by subjecting the personnel rules to strict judicial scrutiny under the "compelling state interest" equal protection standard. Instead, they contend that the "rational basis" equal protection standard of judicial review should apply.

 Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990–91 (1920); *accord*, Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed. 2d 225, 229 (1971). If, however, the classification is found to be based upon "suspect" criteria—such as race or alienage—or if the classification denies or abridges a "fundamental" right, then the classification will "withstand constitutional scrutiny only upon a clear showing that the burden imposed is necessary to protect a compelling and substantial governmental interest." Oregon v. Mitchell, 400 U.S. 112, 238, 91 S.Ct. 260, 321, 27 L.Ed.2d 272, 346 (1970) (separate opinion of Brennan, White and Marshall, JJ.); *accord,* Dunn v. Blumstein, 405 U.S. 330, 341, 92 S.Ct. 995, 1002, 31 L. Ed.2d 274, 283 (1972).[4]

 The United States Supreme Court has long recognized that the freedom to travel throughout the United States "uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement" is a fundamental personal right under the United States Constitution.[5] In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Supreme Court held that since the right to interstate travel is fundamental, "any classification which serves to pe-

4. The two determinants of whether strict judicial scrutiny will be applied are "the relative invidiousness of the particular differentiation," and "the relative importance of the subject with respect to which equality is sought." Cox, The Supreme Court, 1965 Term, Forward: Constitutional Adjudication and the Promotion of Human Rights, 80 Harv.L.Rev. 91, 95 (1966). *See also* Developments in the Law: Equal Protection, 82 Harv.L.Rev. 1065, 1087–1132 (1969).

Several recent decisions of the Supreme Court of the United States have evidenced discontent with the strict scrutiny standard called for by the "compelling state interest" test and the "minimal scrutiny" resulting from employment of the "rational basis" criteria. For an analysis of this development see Professor Gunther's foreword to The Supreme Court, 1971 Term, 86 Harv.L.Rev. 1, 17–24 (1972).

5. Shapiro v. Thompson, 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600, 612

(1969); *see generally* Katkin, Residence Requirements: The Unresolved Issues, 36 Albany L.Rev. 35, 38–45 (1971). The Federal Constitutional right to travel interstate does not derive from any particular textual source in the Constitutional framework. Rather, as Mr. Justice Stewart said in United States v. Guest, 383 U.S. 745, 757–758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239, 249 (1966) (footnote omitted):

> The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized. . . . [The] right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, *freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.*

nalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." [6] (emphasis in original)

Appellants seek to avoid application of the "compelling state interest" standard to this case on the grounds that durational residence provisions of the personnel rules here in question do not penalize the right to interstate travel. They first argue that "no person has the constitutionally protected right to secure employment in the public service," and that, therefore, the state does not penalize the right to travel by conditioning employment or hiring preferences upon one year of prior residency within the state.

■■■■ The constitutional challenge to the durational residency regulations in the case at bar cannot be answered by the argument that public employment is a "privilege" and not a "right." *See* Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287, 296 (1970); Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S. Ct. 1322, 1327, 22 L.Ed.2d 600, 611 (1969). Although there is no constitutional right to employment by the state, the state may not deny a benefit to a person on a basis that infringes his constitutionally protected interests. The Supreme Court has expressly "rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'" Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L. Ed.2d 534, 543 (1971); *accord,* Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct.

2694, 2697, 33 L.Ed.2d 570, 577 (1972). *See also* Nichols v. Eckert, 504 P.2d 1359 (Alaska 1973). Thus we hold that, although the state has no duty to provide public employment, the state may not restrict the opportunity for such employment by invidious distinctions between classes of its citizens.[7] As Justice Tobriner said, speaking for the Supreme Court of California in Purdy & Fitzpatrick v. State, 71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645, 657 (1969), "we may no longer question that state regulation of public employment must accord with the Fourteenth Amendment."

Appellants alternatively seek to avoid the application of the compelling state interest test by arguing that the durational residence requirement does not "directly" impinge on the right to travel, because state employment, the benefit sought by appellee, does not involve "essential or fundamental rights." Appellant contends that Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), require strict scrutiny of durational residence laws only when those laws condition the availability of public benefits of basic importance. Appellants point to the fact that in *Dunn* the durational residence requirement abridged the fundamental right of franchise, while in *Shapiro,* the durational residency requirement denied welfare benefits.

■■■ The *Dunn* Court, however, made clear that discriminatory treatment based on the "suspect classification" of recent

**6.** 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600, 615.

**7.** *See generally,* Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968). In Shapiro v. Thompson, 394 U.S. at 633, 89 S.Ct. at 1330, 22 L.Ed.2d at 614 (1969), the Supreme Court recognized that
> a State has a valid interest in preserving the fiscal integrity of its [welfare] programs. It may legitimately attempt to limit its expenditures, whether for public

assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. . . . The saving of welfare costs cannot justify an otherwise invidious classification. (footnote omitted)

Thus, although there is no constitutional right to receive welfare benefits, a person may not be denied welfare benefits based on a classification which invidiously discriminates.

state travel is itself a sufficient independent "trigger" to bring into play the compelling state interest test:

> In the present case, whether we look to the benefit withheld by the classification (the opportunity to vote) or the basis for the classification (recent interstate travel) we conclude that the State must show a substantial and compelling reason for imposing durational residence requirements.[8]

The Supreme Court in *Dunn,* as well as in Dandridge v. Williams [9] and San Antonio School District v. Rodriguez,[10] put to rest any surviving question that the Court reached its holding in *Shapiro* based on the "fundamental" importance of welfare benefits, rather than because travel was penalized. We therefore conclude that the right to interstate travel is itself a fundamental right and any classification which serves to penalize the exercise of that right must be subjected to strict judicial scrutiny.

We are of the further view that Alaska's personnel rules which grant hiring preferences to persons who have satisfied the durational residency requirement penalize interstate travel. The *Dunn* opinion declares that there need not be an actual deterrence to migration between the states to actuate the compelling interest test:

> [The State] seeks to avoid the clear command of *Shapiro* by arguing that durational residence requirements for voting neither seek to nor actually do deter such travel . . . .
>
> This view represents a fundamental misunderstanding of the law . . . . In Shapiro we explicitly stated that the compelling state interest test would be triggered by "any classification which serves to *penalize* the exercise of that right [to travel]. . . ." [11]

Moreover, Justices Brennan, White and Marshall noted in their separate opinion in Oregon v. Mitchell, 400 U.S. 112, 238, 91 S.Ct. 260, 321, 27 L.Ed.2d 272, 346:

> By definition, the imposition of a durational residence requirement operates to penalize those persons, and only those persons, who have exercised their constitutional right of interstate migration. Of course, governmental action that has the incidental effect of burdening the exercise of a constitutional right is not *ipso facto* unconstitutional. But in such a case, governmental action may withstand constitutional scrutiny only upon a clear showing that the burden imposed is necessary to protect a compelling and substantial governmental interest. (citations omitted)

Following Oregon v. Mitchell, the Court in Dunn v. Blumstein concluded:

> Durational residence laws impermissibly condition and penalize the right to travel by imposing their prohibitions on only those persons who have recently exercised that right. . . . Absent a

---

8. 405 U.S. at 335, 92 S.Ct. at 999, 31 L.Ed. 2d at 280.

9. 397 U.S. 471, 484 n. 16, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970).

10. 411 U.S. 1, 31, 93 S.Ct. 1278, 1295, 36 L.Ed.2d 16, 41 (1973).

11. 405 U.S. at 339, 340, 92 S.Ct. at 1001–1002, 31 L.Ed.2d at 282–283 (citation and footnotes omitted). Other courts have made clear that the penalty need not to any ascertainable degree *deter* travel; it need only penalize those persons who have exercised their constitutional right of interstate travel. In this regard the Second Circuit said in King v. New Rochelle Municipal

Housing Authority, 442 F.2d 646, 648 (2d Cir. 1971):

> The Authority counters that, because of the lengthy waiting lists involved, there is no deterrence to travel effected by the five-year residency requirement. Without passing on this contention, we do find that the residency requirement penalizes respondents by adding an additional period of as much as five years to the time they must wait for public housing and that this penalty is imposed solely because they have recently exercised their right to travel. (footnote omitted)

*Accord,* Cole v. Housing Authority of City of Newport, 435 F.2d 807, 809–811 (1st Cir. 1970).

compelling state interest, a State may not burden the right to travel in this way.

405 U.S. at 342, 92 S.Ct. at 1003, 31 L.Ed. 2d at 284 (footnotes omitted). The Supreme Court of the United States did not restrict its conclusion to durational residency laws which condition the right to vote, or eligibility for welfare benefits, but rather held that durational residency laws in general penalize the right to travel. The Court in Dunn v. Blumstein thus concluded that

. . . durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are *"necessary* to promote a *compelling* governmental interest."

405 U.S. at 342, 92 S.Ct. at 1003, 31 L.Ed. 2d 284 (citations omitted).[12] Therefore, we in turn conclude that the durational residency requirement here in question may stand only upon a demonstration that it is necessary to promote a compelling state interest.

We do not hereby decide that all durational residency requirements are *ipso facto* unconstitutional. The Supreme Court of the United States in *Dunn* and this court in State v. Van Dort, 502 P.2d 453 (Alaska 1972), allowed a penalty levied on interstate travel to stand by permitting a 30-day residency requirement for voter registration. However, in spite of such penalty, both the Supreme Court in *Dunn* and this court in *Van Dort* found that the states' compelling interest in preventing voter fraud and voting by non-residents necessitated this minimal penalty on the right to interstate travel. 405 U.S. at 347, 92 S.Ct. at 1005, 31 L.Ed.2d at 287; 502 P.2d at 455. Further, as Judge Coffin noted in Cole v. Housing Authority of City of Newport, 435 F.2d 807, 811 (1st Cir. 1970):

A resident of Maine vacationing for a month in New Hampshire might be penalized for traveling if he could not obtain the benefits of a library card in New Hampshire during his vacation. Nevertheless, a residency requirement so "penalizing" that kind of travel is probably permissible under *Shapiro*. (footnote omitted)

We now turn to the question of whether Alaska's durational residence requirements are necessary to promote a compelling state interest. In considering the interests claimed by the state, we are mindful of the Supreme Court's injunction in *Dunn*:

It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with "precision," NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405, 421 (1963); United States v. Robel, 389 U.S. 258, 265, 88 S. Ct. 419, 424, 19 L.Ed.2d 508, 514 (1967), and must be "tailored" to serve their legitimate objectives. Shapiro v. Thompson, *supra,* 394 U.S. at 631, 89 S.Ct. at 1329, 22 L.Ed.2d at 613. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L. Ed.2d 231, 237 (1960).

405 U.S. at 343, 92 S.Ct. at 1003, 31 L.Ed. 2d at 285.

---

12. Other courts have held that state hiring practices which accord preferences to persons who have satisfied durational residency requirements penalize the exercise of the right to travel. *See* Carter v. Gallagher, 337 F.Supp. 626 (D.Minn.1971); Stevens v. Campbell, 332 F.Supp. 102 (D.Mass.1971).

*Cf.* Eggert v. City of Seattle, 81 Wash.2d 840, 505 P.2d 801, 805 (1973) holding that a city charter provision granting a preference in municipal employment to persons who have resided in the city for one year implies a penalty of the right to travel, albeit intrastate travel.

Appellants advanced essentially two professed purposes which they contend are served by the durational residency laws. First they contend that the employment preference "helps reduce chronic unemployment, primarily among . . . Native residents," and "upgrades and utilizes more fully Alaska's human resources."

■ We recognize the state's valid interest in upgrading Alaska's human resources, and in reducing the level of unemployment within the state. It does not appear, however, that the employment preference furthers the purpose of reducing unemployment except by deterring the in-migration of persons from other states. The personnel rules in question do not increase the number of available state employment opportunities, but simply limit the universe of persons who may compete for them. To the extent that the personnel rules "lower unemployment" by fencing out competition from other states, the rules impermissibly discriminate against persons who have recently traveled to the state. Additionally, there is evidence in the record which indicates that the state's unemployment problems stem from inadequate education and vocational training and from insufficient job opportunities in remote areas of the state.[13] The personnel rules creating an employment preference are poorly "tailored" to achieve the objective of lowering state unemployment. There are certainly available to the state other means for lowering unemployment which impose

a lesser burden on the constitutionally protected right to interstate travel.[14]

■ We also recognize the state's legitimate interest in reducing unemployment among its residents in order to relieve the burden unemployment imposes upon the public purse. The United States Supreme Court has reaffirmed its position that the compelling interest standard is not satisfied by urgent fiscal need:

We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly, in the cases before us, appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification.

Shapiro v. Thompson, 394 U.S. at 633, 89 S.Ct. at 1330, 22 L.Ed.2d at 614 (footnote omitted). Thus, the state may not deny or severely limit public employment opportunities to new residents simply as a means of saving money. We therefore conclude that the durational residency requirement is not necessary to promote the compelling governmental interest of reducing unem-

---

13. *See* Federal Field Committee for Development Planning in Alaska, Economic Outlook for Alaska, at 311–12 (1971):

The skill levels of in-migrants and seasonal workers are generally higher than those of the unemployed or underemployed resident workers. Their ability to command jobs in Alaska is a symptom of, rather than the cause of conditions resulting in high unemployment rates, particularly among Alaska Natives. Those who need the jobs the most tend to be under-educated, untrained, or living in areas of the state remote from job opportunities. Unless unemployed residents— most of whom are Eskimos and Indians— have access to job markets and receive

the education and training required to fit them into Alaska's increasingly technological economy and unless there is a restructuring of labor demands, new jobs will continue to be filled by persons from other states who have the necessary qualifications. (footnote omitted)

14. Job training programs, for example, may reduce unemployment without imposing a burden on the right of interstate travel. Appellants argue that the durational residency rules protect job openings "from the huge number of in-migrants . . . while the training takes place." There is no evidence that the state in fact uses the one-year preference as a means to preserve employment opportunities for job trainees.

ployment and "upgrading Alaska's human resources."

■ The other compelling state interest which appellants tender in support of the durational residence requirement is that it improves the efficiency of state government by reducing personnel turnover. It is worth noting here that appellee has not challenged the state's interest in preferring bona fide residents over non-residents in selecting employees for public service.[15] It does not appear that the state's interest in preventing personnel turnover is so substantial, so compelling, that it necessitates burdening the constitutionally protected right of interstate travel.[16]

In the case at bar we make no determination as to the length of time it would be constitutionally permissible for the state to take in order to ascertain whether or not an applicant for state employment is a bona fide resident of the State of Alaska. In State v. Van Dort, 502 P.2d 453, 454–455 (Alaska 1972) the state sought, in part, to uphold a 75-day residence requirement for voter qualification on the ground that such a provision was necessary to "'guar-

antee the franchise uncompromised to the state's bona fide voters.'" In *Van Dort* this court rejected the state's assertions because we were not persuaded that considerations of administrative necessity required a 75-day period. We therefore concluded that 30 days was the maximum permissible residence period for voting rights. *See* Dunn v. Blumstein, 405 U.S. at 348, 92 S. Ct. at 1006, 31 L.Ed. at 288.

■ We are unable to conclude that the durational residence requirements for state employment are tailored with sufficient precision to satisfy the compelling state interest test. For the foregoing reasons, we conclude that the durational residence hiring preference embodied in Alaska Personnel Rules 1, 3 09.0 and 4 01.1 is inconsistent with the equal protection of the laws afforded by the Alaska constitution, art. I, § 1 and by the fourteenth amendment to the United States Constitution;[17] and, therefore, we affirm the judgment of the superior court.

Affirmed.

BOOCHEVER, J., not participating.

15. Preferring residents over non-residents apparently does not penalize "travel," as the Supreme Court uses that term. *See* Dunn v. Blumstein, 405 U.S. at 338, 92 S.Ct. at 1001, 31 L.Ed.2d at 282; Oregon v. Mitchell, 400 U.S. 112, 285, 91 S.Ct. 260, 345, 27 L.Ed. 272, 374 (1970); Cole v. Housing Authority of City of Newport, 435 F.2d 807, 811 (1st Cir. 1970); Note, Shapiro v. Thompson: Travel, Welfare and the Constitution, 44 N.Y.U.L.Rev. 989, 1012 (1969).

16. In Police Department v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212, 216 (1972) Justice Marshall expounded a somewhat different equal protection test. In that case he wrote "As in all equal protection cases, however, the crucial question is whether there is an appropriate gov-

ernmental interest suitably furthered by the differential treatment." Applying this standard we still reach the conclusion that the durational residence hiring preference embodied in Alaska Personnel Rules 1, 3 09.0 and 4 01.1 is violative of the equal protection clauses of both the United States and Alaska constitutions. *See also* Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972).

17. We note that in a recent case, York v. State, 498 P.2d 644 (Hawaii 1972), the Supreme Court of Hawaii, employing a rational basis standard of review, held that Hawaii's three-year durational residency requirement for state employment violated the Equal Protection clause of the United States Constitution.