**STATE of Alaska and Leroy Adams,
Appellants,**

v.

**Rayann ADAMS, Appellee.**

**No. 1929.**

Supreme Court of Alaska.

May 23, 1974.

John E. Havelock, Atty. Gen., Richard W. Garnett, III, James N. Reeves, Asst. Attys. Gen., Juneau, for appellant State.

John E. Reese, Alaska Legal Services Corp., Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

ERWIN, Justice.

This case involves an appeal by the Attorney General from a. final judgment holding AS 09.55.140 [1] unconstitutional under the United States and Alaska Constitutions.

Appellee Rayann Adams brought a divorce suit in the Superior Court, First Judicial District. Her husband, appellant Leroy Adams, was not a resident of Alaska, but appellee had resided continuously within the state for a period of approximately three months prior to filing her complaint.

Appellee alleged in her complaint that the one-year residency requirement of AS 09.55.140 infringes her fundamental rights of interstate travel, due process and equal protection which are guaranteed by the United States and Alaska Constitutions. After a trial upon stipulated facts and

---

1.  AS 09.55.140 provides:

    *Residence requirement for divorce.* No person may commence an action for divorce until he has been a resident of the state for at least one year before the commencement of the action.

memoranda, the superior court concluded that AS 09.55.140 violated the equal protection clauses of the United States and Alaska Constitutions [2] and ordered that appellee be permitted to prove that she was a bona fide Alaska resident having her domicile here.

Two recent United States Supreme Court decisions dealing with durational residency requirements are relevant here: Shapiro v. Thompson[3] and Dunn v. Blumstein.[4]

In *Shapiro* the Court struck down a one-year residency requirement conditioning the receipt of welfare benefits. Recognizing the right of interstate travel as a fundamental constitutional right, the Court declared:

> [A]ny classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional.[5]

The Court then concluded that conditioning welfare benefits on a one-year residency served no compelling governmental interest which justified inhibition of interstate travel. However, the Court intimated that other durational residency requirements might be countenanced if they promote a compelling state interest or do not penalize the right of interstate travel.[6]

In *Dunn* the Court held that a one-year residency requirement conditioning the right to vote abridged the fundamental rights of franchise and interstate travel.

As such, it was subjected to strict scrutiny under the compelling state interest test. Applying this standard the Court found no compelling state interests justifying the one-year requirement.[7]

■ Unlike *Shapiro,* however, *Dunn* was not restricted to the particular facts of the case. Rather the Court articulated the broad proposition that durational residency laws in general penalize the fundamental right of interstate travel. The Court also declared that no actual deterrence to interstate migration need be demonstrated to actuate the compelling state interest test.[8] Thus, while not deciding that all durational residency requirements are per se unconstitutional, the United States Supreme Court has at least mandated that all such requirements are to be measured by the compelling state interest test.

We have twice before considered durational residency issues. In State v. Van Dort [9] we applied the compelling state interest test in striking down a 75-day voter residency requirement:

> It is our reading of *Dunn* that all durational residency requirements are prima facie invalid as in contravention of the equal protection clause because they penalize the right to travel and the right to vote in elections on an equal basis with other citizens in the jurisdiction. The only durational residency requirements that will be countenanced are those which are absolutely necessary for administrative purposes.[10]

---

2. U.S.Const. amend. 14, § 1 provides in pertinent part:

> No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.

Alaska Const. art. I, § 1 provides in pertinent part:

> This constitution is dedicated to the principles . . . that all persons are equal and entitled to equal rights, opportunities, and protection under the law. . . .

3. 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

4. 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

5. 394 U.S. at 634, 89 S.Ct. at 1331, 22 L.Ed.2d at 615 (emphasis in original).

6. *Id.* at 638 n. 21, 89 S.Ct. at 1333, 22 L.Ed. 2d at 617 n. 21.

7. The Court nonetheless permitted a 30-day residency requirement on grounds of administrative necessity. 405 U.S. at 348, 92 S.Ct. at 1006, 31 L.Ed.2d at 288.

8. *Id.* at 338–341, 92 S.Ct. at 1001–1002, 31 L.Ed.2d at 282–283.

9. 502 P.2d 453 (Alaska 1972).

10. *Id.* at 454. Applying this standard we then permitted a 30-day voter residency requirement. *Id.* at 455.

More recently in State v. Wylie,[11] we again applied the compelling state interest test in holding unconstitutional certain state personnel regulations which granted absolute hiring preferences to job applicants who had resided in the state for at least one year.[12] But we nevertheless stated:

> We do not hereby decide that all durational residency requirements are *ipso facto* unconstitutional.[13]

The validity of a durational residency requirement in a divorce statute is a question of first impression in Alaska. However, at least twelve other jurisdictions have recently been presented with cases involving this question. Two federal district courts—in Florida and Iowa—and the high-est courts in six states—Florida, Hawaii, Minnesota, New Hampshire, Ohio and Vermont—have sustained the validity of durational residency requirements in divorce statutes.[14] Three federal district courts—in Hawaii, Rhode Island and Wisconsin—and the highest court in Massachusetts have invalidated them.[15]

Illustrative of the cases striking down durational residency requirements in divorce statutes in Wymelenberg v. Syman.[16] Sitting as a three-judge panel, a federal district court held that a Wisconsin statute [17] requiring a two-year residency by a party before a divorce action could be commenced violated both the equal protection and due process clauses of the fourteenth amendment. Citing Boddie v. Connecticut,[18] which held that court filing

---

11. 516 P.2d 142 (Alaska 1973).

12. *But see* 516 P.2d at 145 n. 4 where we recognized growing discontent in the United States Supreme Court with the "two-tiered" equal protection standard of review consisting of strict scrutiny under the compelling state interest test and minimal scrutiny under the rational basis test. Professor Gunther has pointed out:

  After years in which strict scrutiny-invalidation and minimal scrutiny-non-intervention correlations were virtually intact, the pattern has suddenly become unsettled. Gunther, In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1, 19 (1972).

  The Court may be searching for a new equal protection analysis. Justice Marshall has tried to formulate a single basic test: "Whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212, 216 (1972). *See also* Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 172–173, 92 S.Ct. 1400, 1405, 31 dridge v. Williams, 397 U.S. 471, 508, 90 S.Ct. 1153, 1173, 25 L.Ed.2d 491, 515 (1970) (Marshall, J., dissenting). However, the two-tiered standard has never been expressly rejected by a majority of the Court in favor of a new test.

13. 516 P.2d at 148.

14. Shiffman v. Askew, 359 F.Supp. 1225 (M. D.Fla.1973); Sosna v. Iowa, 360 F.Supp. 1182 (N.D.Iowa 1973); Caizza v. Caizza, 291 So.2d 569 (Fla.1974); Whitehead v. White-head, 53 How. 302, 492 P.2d 939 (1972); Davis v. Davis, 210 N.W.2d 221 (Minn.1973); Porter v. Porter, 296 A.2d 900 (N.H.1972); Coleman v. Coleman, 32 Ohio St.2d 155, 291 N.E.2d 530 (1972); Place v. Place, 129 Vt. 326, 278 A.2d 710 (1971).

15. Mon Chi Heung Au v. Lum, 360 F.Supp. 219 (D.Hawaii 1973); Larsen v. Gallogly, 361 F.Supp. 305 (D.R.I.1973); Wymelenberg v. Syman, 328 F.Supp. 1353 (E.D.Wis. 1971); Fiorentino v. Probate Court, Mass., 310 N.E.2d 112, 42 U.S.L.W. 2540 (1974).

16. 328 F.Supp. 1353 (E.D.Wis.1971).

17. Wis.Stat. § 247.05(3) provides:
  *Actions by or against residents for divorce.* Regardless of where the cause of action arose, an action for divorce by or against a person who has been a bona fide resident of this state for at least 6 mo. next preceding the commencement of this action shall be commenced in the county of the state in which at least one of the parties has been a bona fide resident for not less than 30 days next preceding the commencement of the action.

18. 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). The Court in *Boddie* stated:
  [G]iven the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages. *Id.* at 374, 91 S.Ct. at 784, 28 L.Ed.2d 116–117.

**1128**

fees deprived indigents of due process of law by unreasonably denying them access to Connecticut's divorce courts, the federal court stated that marriage is a " 'fundamental human relationship' . . . which represents one of the 'basic civil rights of man.' "[19] Thus, when the state preempts the means for dissolving this relationship by permitting divorce only through the courts, the state may limit access to these courts only when there exist either meaningful alternatives to a divorce or countervailing state interests of "overriding significance."[20]

Quickly dismissing the proposition that annulments or legal separations are meaningful alternatives to divorce, the court concluded that neither the state's interests in deterring those with marital problems from entering the state, maintaining marital stability, assuring residence of divorce applicants, nor protecting the reputation of the state's divorce decrees were of such "overriding significance" that residents who had not lived in the state for at least two years could be excluded from its divorce courts.[21] Regarding the state's interest in deterring persons with marital problems from entering the state, the court concluded:

> [I]t is impermissible for a state to attempt to chill an individual's constitutional right to travel to and settle in the state of his choice.[22]

The state's concern for maintaining marital stability was also rejected because:

While a state may attempt to maintain marital stability among its citizens, 'this logic would also require a similar waiting period for long-term residents of the State.'[23]

Turning to the interest in assuring residence, the court pointed out that establishment of domicile rather than fulfillment of a waiting period is the essential criterion in determining divorce jurisdiction. Thus, although a durational residency requirement is of "some evidentiary value in determining domicile," its effect is to raise an "irrebutable presumption that a domicile cannot be established in less than two years."[24]

> 'Far less drastic means' of determining domicile are available to a trial court possessing full subpoena powers and the advice of a Family Court Commissioner.[25]

Finally, the court rejected the state's concern for preserving its reputation in divorce matters, concluding:

> [T]here would seem little danger that Wisconsin would turn into a divorce mill provided that the law of domicile is followed in determining jurisdiction over a divorce matter.[26]

Representative of the cases upholding durational residency requirements in divorce statutes[27] is Whitehead v. Whitehead.[28] In *Whitehead* the Hawaii Supreme Court held that a one-year residency requirement in its divorce statute[29]

19. 328 F.Supp. at 1354 (citation omitted), *quoting* Boddie v. Connecticut, 401 U.S. 371, 383, 91 S.Ct. 780, 788, 28 L.Ed.2d 113, 122 (1971), and Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010, 1018 (1967).

20. 328 F.Supp. at 1356, *quoting* Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113, 118 (1971). *Compare* Bush v. Reid, 516 P.2d 1215, 1218–1219 (Alaska 1973).

21. 328 F.Supp. at 1355.

22. *Id.*

23. *Id., quoting* Shapiro v. Thompson, 394 U.S. 618, 637, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600, 617 (1969).

24. 328 F.Supp. at 1355 (footnote omitted).

25. *Id.* (footnote omitted).

26. *Id.* at 1356.

27. Note 14 *supra*.

28. 53 Haw. 302, 492 P.2d 939 (1972) (3–2 decision). *Contra* Mon Chi Heung Au v. Lum, 360 F.Supp. 219 (D.Hawaii 1973).

29. Haw.Rev.Stat. § 580–1 reads in pertinent part:
> *Jurisdictions; hearing.* Exclusive original jurisdiction in matters of annulment, divorce, and separation . . . is conferred upon the judge or judges of the family court of the circuit in which the applicant has been domiciled or has been physically present

was not constitutionally defective. First applying the rational basis test, the court recognized that the goal of the durational residency requirement was to provide an objective test for domicile. It then concluded that such an objective test was justified due to "the possibility of perjury if the finding on that issue is made dependent upon the testimony of an interested party," as it most likely would be under any form of subjective test.[30]

In analyzing whether the more strict compelling state interest test should be applied, the court distinguished a durational residency requirement in a divorce statute from one in a welfare statute. In their view, the purpose of the requirement in the divorce statute was not to deter interstate travel, as it was in the *Shapiro* welfare statute, but to assure the establishment of domicile. Further, unlike welfare which provides basic necessities of life, "[d]ivorce can wait."[31] It is not likely that a person would be deterred from moving to another state simply because he could not get an immediate divorce there. Hence, the probability of the residency requirement actually deterring exercise of the right to interstate travel was considered too remote for the compelling state interest test to be actuated.[32]

The court also considered a claim, based upon Boddie v. Connecticut,[33] to the effect that the one-year residency requirement deprived indigents of due process of law by unreasonably denying them access to the only forum capable of dissolving their marriages. Rejecting this claim, the court distinguished *Boddie* on the narrow ground that, unlike a filing fee, the particular durational residency requirement in question was not a procedural prerequisite to commencing a divorce suit but rather a substantive pre-condition to the actual granting of a divorce decree. Thus, a divorce complainant

> who fails to prove that he has been domiciled or has been physically present in this State for one year will not be able to obtain a divorce because of failure to satisfy a substantive requirement, not because he is denied access to court.
>
> Thus, we do not think Boddie is relevant . . . .[34]

The majority opinion in *Whitehead* was accompanied by a well-reasoned dissent written by Justice Levinson. First dismissing the importance of the majority's observation that *Boddie* was predicated upon a classification relating to wealth rather than residency for a fixed period, Justice Levinson concluded that *Boddie* was controlling because in both *Boddie* and *Whitehead* the state had chosen to monopolize the procedures for dissolving marriage—a fundamental human relationship.[35]

He then analyzed each of the asserted state interests in the one-year residency requirement to determine if any of them were sufficiently important to justify denying one class of the state's residents access to its divorce courts. He pointed out that the need to secure jurisdiction over the parties so that full faith and credit would be accorded to the state's divorce decrees was inadequate because jurisdiction

---

for a continuous period of at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least one year next preceding the application therefor.

30. 492 P.2d at 943.

31. *Id.* at 944–945.

32. *Id.* Immediately following the court's analysis, it stated:

We thus hold that, under the stricter standard also, the residential requirement for divorce . . . does not violate the equal protection clause. *Id.* at 945.
We read this statement in light of the court's preceding analysis to mean that the compelling state interest test was inapplicable because no fundamental right was violated.

33. 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

34. 492 P.2d at 947.

35. *Id.* at 949.

is dependent upon only one of the spouses being domiciled within the state:

> The length of actual residence is immaterial so long as, at some point, physical presence coincides with an intention to establish a permanent place of abode.[36]

Nor could the state's claim that the requirement was necessary to protect the divorce courts from fraudulent allegations of domicile support a distinction between classes of Hawaii's residents because the danger of perjured testimony had not been shown to be greater in divorce suits than in any other proceedings in which testimony is substantially elicited from interested parties. Recognizing that other less restrictive alternatives such as penalties for false pleadings and affidavits exist to deter false testimony without infringing upon the basic constitutionally protected right to dissolve a marriage, Justice Levinson stated:

> The State may not impose an irrebuttable presumption against residence or domicile under circumstances in which they may in fact exist merely to achieve the 'remote administrative benefit' of providing a facile measure of their existence.[37]

Finally, he rejected the state's argument to the effect that the durational residency requirement gave the family court an opportunity to gather information concerning the welfare of any children who would be affected by the divorce. Observing that the statute was not drawn to apply only to divorces where custody of children was in issue, he concluded that there were less restrictive means for protecting the interests of such children.[38]

Turning to the question of equal protection, Justice Levinson reiterated the view of the United States Supreme Court in *Dunn* that *all* durational residency require-

ments are inherently destructive of the fundamental right of interstate travel and, therefore, should be subjected to the compelling state interest test. He then concluded that the one-year requirement in question must fall because the state had failed to show that it served a compelling state interest. He also concluded that the requirement was invalid even under the less stringent rational basis test because it unreasonably burdened many childless divorce-complainants and bore no reasonable relation to the purposes advanced by the state.[39]

Just one year later the same Hawaii statute was struck down by a three-judge federal district court in Mon Chi Heung Au v. Lum.[40] Scrutinizing the statute under the compelling state interest test, the court found that only the state's interest in preventing fraudulent assertions of domicile was sufficiently persuasive to warrant close analysis. Upon examining this interest, the court concluded:

> Absolute durational residence requirements on divorce are, nevertheless, constitutionally flawed in that their efficacy in isolating those nondomiciliaries most likely to assault divorce courts is accompanied by an inability to segregate bona fide domiciliaries from those so isolated. The existence of a myriad of tangible criteria highly relevant to bona fides of domicile convinces us that the simple expediency of denying all recent travelers access to the divorce courts violates equal protection for the dual reasons that: 1) it is not "tailored" with "precision" to achieve its objectives by other available means less burdensome to the fundamental right to travel . . . and 2) it creates an impermissible "conclusive presumption" of nonresidency. . . .[41]

---

36. *Id.* at 951.

37. *Id.. quoting* Carrington v. Rash, 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed. 2d 675, 680 (1965).

38. 492 P.2d at 950.

39. *Id.* at 952–953.

40. 360 F.Supp. 219 (D.Hawaii 1973). Interestingly the court saw fit to give *Whitehead* only cursory mention in several footnotes. *Id.* at 221 n. 4, 8, 222 n. 13.

41. *Id.* at 222 (footnote and citations omitted). The court also considered a due process claim based upon *Boddie,* but after indicating that application of the *Boddie* rationale would be

■ Insofar as the equal protection issue is concerned at least, we believe that *Wymelenberg, Mon Chi Heung Au,* and Justice Levinson's dissent in *Whitehead* are more persuasive than those cases which have upheld durational residency requirements in divorce statutes.[42] All durational residency requirements inherently infringe upon the fundamental constitutional right of interstate travel.[43] Hence, all such requirements are prima facie invalid and will be countenanced only when they serve a compelling state interest.[44] There need be no actual deterrence to interstate migration to actuate strict scrutiny under the compelling state interest test. In our view, the nature of the benefit withheld by the state is relevant only to judging the relative importance of the competing state interest, not to determining the applicable standard of judicial review.

AS 09.55.140 must therefore be scrutinized to determine if such important public goals as protecting the integrity of the basic family unit and assuring the validity of the state's divorce decrees are sufficiently compelling to justify abridgement of the fundamental right of interstate travel and to determine if any less restrictive alternatives exist for achieving such goals.

We first examine the state's interest in protecting the basic family unit. There is little doubt that the state has a strong public interest in preserving the marital relationship and in guaranteeing the welfare of the affected children. But AS 09.55.140 operates to preserve the marriages of only those persons who have not resided in the state for at least one year and does nothing to preserve the marriages of long-time residents. Further, the statute does not purport to distinguish between divorce actions where custody of children is an issue and those where it is not. It thus appears that its underlying purpose was not to further these important state interests. Even if it were, the requirement is not tailored with sufficient precision to accomplish these goals without unnecessarily infringing upon fundamental constitutional rights. Consequently, it is concluded that when scrutinized under the compelling state interest test AS 09.55.140 cannot be sustained upon the basis of the state's interest in protecting the basic family unit.

■ Turning to the state's interest in assuring the validity of its divorce decrees, the United States Supreme Court has held that domicile on the part of a divorce-complainant is an adequate minimum contact to satisfy the due process clause and entitle a divorce decree to full faith and credit under the United States Constitution.[45] Domicile is established by an actual physical presence in the state coupled with a coincident intent to make the state one's permanent place of abode. Domicile cannot be established by mere physical presence in the state for a fixed period without

"a highly speculative and subjective endeavor," court declined to decide the claim in view of its decision on equal protection grounds. *Id.* at 220 n. 3.

42. Note 14 *supra.*

43. Dunn v. Blumstein, 405 U.S. 330, 338–341, 92 S.Ct. 995, 1001–1002, 31 L.Ed.2d 274, 282–283 (1972) ; State v. Wylie, 516 P.2d 142, 147 (Alaska 1973) ; State v. Van Dort, 502 P.2d 453, 454 (Alaska 1972).

44. We are not unmindful that application of the compelling state interest test has been criticized as being outcome determinative. Dunn v. Blumstein, 405 U.S. 330, 363, 92 S.Ct. 995, 1013, 31 L.Ed.2d 274, 296 (1972) (Burger, C. J., dissenting) ; Breese v. Smith,

501 P.2d 159, 177 (Alaska 1972) (Erwin, J., concurring). However, insofar as we can deduce, this criticism is only a reflection of growing discontent with the two-tiered equal protection standard of review. See note 12 *supra* and the cases cited therein. Until this discontent crystallizes into a fully developed alternative test, we choose to follow the established two-tiered standard.

45. Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Other kinds of contacts may also be sufficient. For example, divorce decrees granted to nondomiciliary military plaintiffs stationed in the state for at least one year have been sustained. Lauterbach v. Lauterbach, 392 P.2d 24 (Alaska 1964).

the intent to permanently reside there, but the strong presumption of domicile which arises from physical presence is usually difficult to rebut.[46] Thus, as a practical matter, domicile may be established either through a "subjective" test—examination of the proponent's actual state of mind—or through an "objective" test—*e. g.,* a durational residency requirement.

■ The subjective test is, of course, dependent to a large extent upon conduct traditionally indicative of domiciliary intent, *e. g.,* local voter registration.[47] It is also heavily dependent upon the *ex parte* testimony of an interested party—the divorce complainant. As such, it is likely that any form of subjective test would increase the burden upon the divorce courts. But there is no concrete evidence that a subjective test would produce any less respect for the state's divorce decrees or would encourage fraudulent allegations of domicile. A subjective test for domicile thus appears to be a reasonable, less restrictive alternative to the objective test which does not infringe upon or penalize the fundamental constitutional right of interstate travel. It is therefore our view that, when scrutinized under the compelling state interest test, AS 09.55.140 also cannot be sustained upon the basis of the state's interest in assuring the validity of its divorce decrees.

We thus conclude that the trial court was correct in determining that AS 09.55.-140 violates the equal protection clauses of the Alaska and United States Constitutions.[48]

The decision of the superior court is affirmed.

---

46. *See generally,* Annot. 2 A.L.R.2d 271 (1948) and the cases discussed therein.

47. For other relevant criteria, see Comment, 30 Md.L.Rev. 367, 380 n. 113 (1970).

48. Our decision of the case on the equal protection ground and the failure of appellant to brief the due process issue makes it unnecessary to consider whether there are due process problems with the denial of access to the state's divorce courts to those residents who have resided in the state for less than one year.