Totten, J.,
delivered the opinion of the court
The case is a bill in the nature of an interpleader, brought by the administrator of Sandel Britt, deceased, against the several persons, claiming adverse and conflicting rights, as dis-tributees of her estate ; and the prayer is, that said persons interplead, and that their conflicting claims be considered and determined.
The material facts are these : Several years since, James J. Britt died in Carroll, in this State, the place of his domicil, leaving his wife, Winny, and several children, that is to say, Sandel Britt, James J. Britt and others, surviving him. For these children a guardian was appointed in the county of Carroll. Thereafter, Winny, the widow, intermarried with Alfred B. Thomason, and the said Winny has three children by this second marriage. Thomason removed from Carroll to the State of Arkansas, taking with him his family and the children of his wife by her former marriage. Becoming dissatisfied with his residence in Arkansas, Thomason determined to remove back to his former residence in Tennessee. With this intent, he, with his family, including Sandel Britt, 'who had been residing with him, left the State of Arkansas, and on the way, at Tunica, in the State of Mississippi, about February, *537 1846, Sandel Britt died, a minor, intestate and unmarried. Thomason then continued his journey, stating at the time that he was on his return from Arkansas to Tennessee. When he came to DeSoto, he remained or resided there for two years, and then finally removed to his former residence in Tennessee. The personal property of Sandel, derived from her father’s estate, remained in possession of her guardian, in Carroll, until it was delivered by him into the possession of the plaintiff, who administered in Carroll.
The principal question is, whether the succession to the estate of said Sandel shall be governed by the laws of Tennessee or Mississippi.
It is insisted that by the removal to Arkansas, the intestate lost her original domicil in Tennessee, and by the removal from Arkansas lost her newly acquired domicil there; and having died in the State of Mississippi, where her surviving parent remained for two years before the original domicil in Tennessee was resumed, the place of her death should be considered her domicil, and the law of that place govern the succession.
We may observe that, by domicil two things are implied; the residence of the person and the intention to make it his home. A minor not being sui juris, has no power or capacity to acquire a new domicil by any act or purpose of his own; his domicil is the place of his birth, if it were at the time the domicil of his parents. If the parents change their domicil, that of the minor necessarily follows it, he being under their will and control, and without any power to choose a domicil for himself.
But in the present case, the father being dead, the minor was removed from her native domicil by her mother, who, by reason of her second marriage, was herself subject to the will and dominion of another, and acquired a new domicil of his selection. The removal was not by the will and act of the *538 mother, but of her husband, who, from anything arising in his relation to the minor, had no power or authority to remove the minor, or to change her domicil. The guardian in Carroll was entitled to the possession of the minor as his ward, so as to enable him to provide for her protection, maintenance and education. It follows, therefore, that as the minor had no power to abandon her domicil of nativity and acquire a domi-cil of choice, and as her removal was by the act of a person who had no rightful authority over her, the original domicil of the minor was not changed by the removal; she did not acquire a new domicil in Arkansas, or lose her domicil of nativity in Tennessee.
If, however, it were conceded that a change of domicil had been effected, yet the removal of the family from Arkansas, with the evident intent to return to their former residence, would be conclusive in favor of the domicil in Tennessee. For, it seems to be a well settled rule, that “if aman has acquired a new domicil, different from that of his birth, and he removes from it with an intention to resume his native domicil, the latter is re-acquired, even while he is on his way, in itinere, for it reverts from the moment the other is given up.” Story’s Con. L., sec. 47.
If this were not so, the person would be, for the time, while in itinere, without any domicil, which would be highly inconvenient ; for, in case of his death, by what law should the succession to his estate be determined ?
At the time the family removed from Arkansas, there was no intention to establish their residence in Mississippi, nor was there any such intention at the time of the intestate’s death. The declarations of Thomason made at the time, are competent evidence, and when taken in connection with his actual movements, on which circumstance their competency depends, they are perfectly conclusive of his intention to resume his original residence in Tennessee. His subsequent *539 residence in Mississippi and temporary change of purpose, cannot affect the question, as the case must turn upon the state of facts existing at the time of the intestate’s death.
We are, therefore, of opinion, that at the time of her-death the intestate had her legal domicil in Tennessee, by whose laws the succession to the personal estate, wherever it may be, will of course be governed. 2 Kent’s Com., Lee. 37.
In the present case, the persons entitled to the succession, are the mother and brothers and sisters of the intestate, both of the whole and half blood; all of whom have an equal interest in the personal estate. Act 1766, ch. 3, sec. 1; 1796, ch. 14, sec. 1; 2 Kent’s Com., Lee. 37.
The view we have taken of the case, being in accordance with that of the chancellor, his decree will, in all things, be affirmed.