**Thomas Joseph PERITO, Appellant,**

v.

**Ruth Catherine PERITO, Appellee.**

**No. S-2224.**

Supreme Court of Alaska.

May 27, 1988.

Steven DeVries and Elizabeth J. Kerttula, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellant.

Ernest Z. Rehbock, Rehbock & Rehbock, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Ruth Perito filed for divorce in Alaska one day after she arrived in this state. Tom Perito, her husband, was not an Alaska resident. The superior court determined that it had jurisdiction based on Ruth's presence and intent to remain indefinitely. The court granted the divorce and awarded attorney's fees to Ruth.

On appeal, Tom Perito argues that the superior court lacked jurisdiction to grant the divorce, and further argues that the court's award of attorney's fees was an abuse of discretion.

### I.

The Peritos were married approximately twenty-five years before they separated in April 1985. During that entire time they resided in New York State. Several months after they separated, Ruth Perito filed for a divorce in New York. Following a trial on July 22–23, 1986, the court orally denied the divorce because Ruth did not prove the requisite grounds for divorce. The court entered a judgment dismissing the action on September 12, 1986.

After the New York court's decision, Ruth contacted attorneys in Nevada and Alaska to inquire about the requirements for divorce in those states. She did not know anybody in Alaska other than the attorney she had contacted. On September 15, 1986, Ruth flew to Alaska, accompanied by a friend, Lois Daly. Ruth brought some of her personal effects with her but left others in New York. Within hours of their arrival, Ruth told Lois Daly "that she felt sure this was the place she wanted to be."

The next day, Ruth filed for a divorce in the Superior Court of Alaska. Tom Perito, her husband, had never been to Alaska. Ruth did not ask the court to determine alimony or property rights. Nor were any child custody issues to be resolved. Shortly thereafter, in Alaska, Ruth rented an apartment on a month-to-month tenancy, searched for and found employment, reg-

istered to vote, and obtained an Alaska driver's license.

On December 19, 1986, Tom Perito's attorney filed a motion to dismiss for lack of jurisdiction, claiming that Ruth was not an Alaska resident when she filed the action. After a hearing, the court determined that it had jurisdiction and denied the motion to dismiss.

Ruth then filed a motion for an award of attorney's fees, indicating that the accrued fees were approximately $5,700. In an attached affidavit, she stated that her husband had possession and use of their marital property, including their home and a business appraised at over $500,000, and had annual income of over $100,000. The superior court awarded $4,000 in fees to Ruth.

The court granted the divorce on May 20, 1987, making detailed findings of fact and conclusions of law on the jurisdictional issue. The court found that its exercise of jurisdiction was proper because Ruth satisfied the residency requirements of (1) presence and (2) intent to remain permanently, as articulated by this court in *State v. Adams*, 522 P.2d 1125 (Alaska 1974). The court also held that the statutory 30–day requirement for residency under AS 01.10.-055, which Ruth did not satisfy at the time she initiated this action, did not bar taking jurisdiction in this case.

Tom Perito appeals, arguing that the court had no jurisdiction and that the court abused its discretion in awarding $4,000 in attorney's fees to Ruth.

## II.

### A. *The test for jurisdiction*

■ Until 1975, Alaska had a statutory one-year residence requirement for divorce: "No person may commence an action for divorce until he has been a resident of the state for at least one year before the commencement of the action." Ch. 101, § 12.07, SLA 1962 (former AS 09.55.140) We held the one-year residence requirement unconstitutional in *State v. Adams*, 522 P.2d 1125, 1132 (Alaska 1974). The legislature responded by repealing AS 09.-55.140. Ch. 208, § 5, SLA 1975. Since then, neither the divorce statutes [1] nor the jurisdictional statutes [2] contain any explicit residency requirement for a divorce uncomplicated by alimony, property division, or child custody.[3] However, there are requirements at common law.[4]

We have never determined the minimum contacts required in Alaska for divorce jurisdiction. However, in *Adams*, we recognized that the Supreme Court found domicile to be an adequate basis for jurisdiction under the United States Constitution.[5] 522 P.2d at 1131. Elaborating on the domicile test, we stated: "Domicile is established by an actual physical presence in the state coupled with a coincident intent to make the state one's permanent place of abode." *Id.*

Our result in *Adams* is in accordance with the Restatement, which states: "A state has power to exercise judicial jurisdiction to dissolve the marriage of spouses one of whom is domiciled in the state."

---

1. AS 25.24.010–.180.

2. AS 09.05.015 and 22.10.020.

3. There still is a residency requirement for an action to declare a marriage void. *See* AS 25.-24.080, .090. However, declaring a marriage void is different from divorce.

4. Some courts have held that domicile of one party is a necessary condition to jurisdiction. *See, e.g., Whitehead v. Whitehead*, 53 Hawaii 302, 492 P.2d 939, 943 (1972). *See also* Annotation, *Length or Duration of Domicil as Distinguished from Fact of Domicil, as a Jurisdictional Matter in Divorce Action*, 2 A.L.R.2d 291, 292 (1948). The Supreme Court has never had occasion to determine whether domicile is constitu-

tionally required as a matter of due process. Restatement (Second) of Conflict of Laws § 72, reporter's note (1971). Due process certainly requires some level of contact before jurisdiction can be asserted.

5. The Supreme Court held that domicile is an adequate basis for divorce jurisdiction in *Williams v. North Carolina*, 317 U.S. 287, 298–301, 63 S.Ct. 207, 213–15, 87 L.Ed. 279, 285–88 (1942). This court has held that divorce jurisdiction is proper when a *non*-domiciliary military plaintiff has been stationed in the state for a year. *Lauterbach v. Lauterbach*, 392 P.2d 24, 25, 27 (Alaska 1964).

Restatement (Second) of Conflict of Laws § 71 (1971). "To acquire a domicile of choice in a place, a person must be physically present there," *id.* at § 16, and "must intend to make that place his home for the time at least." *Id.* at § 18.

The question remains whether the legislature added additional prerequisites to the courts' divorce jurisdiction when it enacted AS 01.10.055 in 1983. *See* Ch. 67, § 1, SLA 1983.

> Alaska Statute 01.10.055 states in part: Residency. (a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.
>
> (b) A person demonstrates the intent required under (a) of this section
>
> (1) by maintaining a principal place of abode in the state for at least 30 days or for a longer period if a longer period is required by law or regulation; and
>
> (2) by providing other proof of intent as may be required by law or regulation, that may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.

This statute is codified under the heading "Article 2. General Rules of Statutory Construction," which is contained in "Chapter 10. Laws and Statutes."

The parties raise two conflicting interpretations of this statute: Ruth argues that the only function of AS 01.10.055 is to define "residency" as the term is used in other statutes. Under this view, AS 01.10.-055 is irrelevant in this case, since no other statute requires a person to be a resident in order to file a divorce action. Tom, on the other hand, argues that AS 01.10.055 has general applicability. In particular, he argues it modifies the requirement set forth in *Adams*.

Both interpretations of AS 01.10.055 are plausible, and neither is beyond attack. We believe the better view is that the legislature, by enacting AS 01.10.055, intended

to define "residency" only as the term is used in other statutes. If it intended AS 01.10.055 to apply for all purposes, including the determination of jurisdiction over a divorce action, it would not have put the definition under "General Rules of Statutory Construction." We are influenced by AS 01.10.020, also under "Article 2, General Rules of Statutory Construction," which states:

> Applicability of AS 01.10.040–01.10.090. The provisions of AS 01.10.040–01.10.090 shall be observed in the construction of the *laws* of the state unless the construction would be inconsistent with the manifest intent of the legislature.

(Emphasis added.) In this context, "laws" refers to statutes and regulations and not the common law. Furthermore, in normal usage, the word "construction" applies to statutes, not common law.

■ Thus, the definition of "residency" in AS 01.10.055 is irrelevant in this case, since there is no separate statute requiring that plaintiffs in divorce actions be residents. Alaska Statute 01.10.055 does not affect the common law rule that Alaska courts have jurisdiction over a divorce action when one of the parties is domiciled in Alaska, where "domicile" is defined as physical presence plus an intent to remain permanently.[6] *Adams*, 522 P.2d at 1131–32.

In the absence of a statute so requiring, we see no reason to impose additional prerequisites to jurisdiction of the Alaska courts. Tom Perito argues that additional restrictions would promote the sound public policy of discouraging divorce. However, imposing a durational residence requirement would not discourage divorce among longer-term residents. Furthermore, imposing a jurisdictional bar for the sole purpose of discouraging divorce among recent migrants is a policy determination best left to the legislature.

■ Finally, we must interpret the word "permanently" as used in the *Adams* test

---

**6.** The *Adams* rule is expressed in terms of domicile, not residence. Tom's argument is that AS 01.10.055 makes domicile equivalent to residence, and then imposes a stricter standard for residence.

for domicile. The superior court concluded that the intent to remain permanently should be "interpreted to mean the intent to remain indefinitely. Otherwise, it is likely that a large percentage of Alaskans would not be considered residents, since many intend to retire elsewhere." We agree.

### B. *The factual finding that Ruth was a domiciliary*

■ The superior court found that when Ruth filed her divorce complaint, "she was present with an intent to remain indefinitely or permanently as the term is used in *Adams*." The court's finding that Ruth had the requisite intent was a factual finding. Pursuant to Civil Rule 52, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Alaska R.Civ.P. 52(a) We have examined the record and find no clear error.

At the hearing in the superior court, Ruth was asked:

When did you decide that you would stay in Alaska, that you would live in Alaska?

Ruth answered:

That was the day—the day I arrived in Alaska I had the opportunity to walk around Anchorage and see what it was like, and I was very impressed with it. I was very impressed with the cosmopolitan city that seemed to be here and the warmth and friendliness of the people. And I felt very strongly that I had made the right decision, that this was a place where I could live and work and be happy.

Later, when Ruth was asked whether she intended to remain in this state indefinitely, she replied: "Yes." Lois Daly also testified at the hearing that Ruth told her "she felt sure this was the place she wanted to be."

Tom argues that the evidence presented should have led the judge to the opposite conclusion. For example, when Ruth came to Alaska, she did not quit her job in New York. Instead, she took a one-year leave of absence. But, Ruth testified that she did so in order to (1) keep her options open, and (2) continue her medical insurance coverage while she got settled in Alaska. Thus, the fact that Ruth took a leave rather than terminating her employment is not inconsistent with the court's finding that she intended to remain in Alaska.

The evidence also showed that, at the time she filed this action (one day after she arrived), Ruth maintained two bank accounts in New York, kept a safe deposit box there, owned two cars and a boat there, and had a close relationship with her parents who lived on the east coast. However, we do not believe those facts are inconsistent with a change in domicile in the very recent past.[7] The facts relied on by Tom do not establish clear error in the judge's finding that Ruth intended to remain in Alaska.

### C. *The award of attorney's fees*

■ Tom's arguments that we should reverse the superior court's award of $4,000 in attorney's fees to Ruth have no merit. An award of attorney's fees is discretionary with the trial judge and is reviewable on appeal only for an abuse of discretion. *Horton v. Hansen*, 722 P.2d 211, 218 (Alaska 1986). *See also Gabaig v. Gabaig*, 717 P.2d 835, 844 (Alaska 1986); *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981). We have reviewed the record and find no abuse of discretion.

AFFIRMED.

---

**7.** Within a few months, she closed the accounts, emptied the safe deposit box, transferred the cars to her daughters, and made a trip to New York to visit her family. Also, after she filed this action but before the superior court determined that it had jurisdiction, Ruth obtained a library card, a check cashing card at a local supermarket, and applied for credit cards at two local department stores. She also rented an apartment and found employment. While the question the superior court addressed was whether Ruth was an Alaska domiciliary on the date she filed this action, events that occurred later could have been relevant if they helped the judge shed light on or interpret Ruth's subjective intent on the date she filed.