IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2002 Session

## JENNY L. PARROTT v. JOHN B. ABRAHAM

**Appeal from the Juvenile Court for Montgomery County**
**No. S-6281     L. Raymond Grimes, Judge**

———————————

**No. M2001-02938-COA-R3-JV - Filed February 11, 2003**

———————————

Appellant/Father appeals dismissal of his petition seeking to be named residential custodian of his minor child.  The trial court found that Tennessee was not the "home" state of the child under Tennessee Code Annotated section 36-6-216 and dismissed the case for lack of subject matter jurisdiction.  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and TOM GRAY, SP. J., joined.

Thomas R. Meeks and Gregory D. Smith, Clarksville, Tennessee, and Robert J. Turner, Nashville, Tennessee, for the appellant, John B. Abraham.

Mark R. Olson, Clarksville, Tennessee, for the appellee, Jenny L. Parrott.

### OPINION

In December of 1997, Jenny L. Parrott and John B. Abraham, both residents of Montgomery County, Tennessee, had a romantic relationship.  Jenny Parrott then moved to Wisconsin where, on September 22, 1998, [D.D.A.]was born to her.  On November 1, 2000, she filed, pursuant to the Uniform Interstate Family Support Act (T.C.A. § 36-5-2001, et seq.) a petition in the Juvenile Court of Montgomery County seeking to establish paternity of John B. Abraham and child support for [D.D.A.].  On December 8, 2000, John Abraham answered the petition denying paternity and requesting DNA testing.  On January 4, 2001, an order was entered requiring DNA testing of Jenny Parrott, John Abraham and [D.D.A.] in order to determine paternity.  Results of this DNA testing established that John B. Abraham was indeed the father of [D.D.A.]and, on March 16, 2001, Jenny Parrott returned to Montgomery County with [D.D.A.] and moved into John Abraham's apartment with [D.D.A.].  On March 19, 2001, an agreed order was prepared and executed by John B. Abraham

and his attorney, Thomas R. Meeks, together with Jenny L. Parrott and her attorney, Honorable John H. Lentz, Assistant Attorney General. This order provided:

> This cause came on to be heard on the __26__ day of __April__, 2001 before the Honorable Juvenile Court Judge. Upon a motion by Jenny L. Parrott as well as John B. Abraham that the court find that John B. Abraham is the biological father and that the Department of Vital Statistics amend his records to reflect on the birth certificate that John B. Abraham is the biological father and that both Jenny L. Parrott, Petitioner, and John B. Abraham, Respondent have joint custody of the parties' minor child. Upon an announcement that the parties' are attempting to reconcile and will live together and that John B. Abraham be allowed to claim the parties' minor child as a tax exemption for all future years of income and that there is no need to establish child support based upon the fact that the parties are reconciled and are living together and upon the entire record the court finds:
>
> 1. That the petition presently filed against John B. Abraham be dismissed, *after payment of DNA costs and $1700 birth costs. JHL*
> 2. That the Department of Vital Statistics amend its records inclusive of birth certificate to reflect that John B. Abraham is the biological father of the parties minor child. [sic]
> 3. That the Petitioner, Jenny L. Parrott and the Respondent, John B. Abraham be awarded joint custody of the parties' minor child.
> 4. That John B. Abraham be awarded the legal right to claim the parties minor child as a tax exemption for all future years in regard to his income tax return. [sic]
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:
> 1. That the petition presently filed against John B. Abraham be dismissed, *after payment of DNA costs and $1700 birth costs. JHL*
> 2. That the Department of Vital Statistics amend its records inclusive of birth certificate to reflect that John B. Abraham is the biological father of the parties minor child. [sic]
> 3. That the Petitioner, Jenny L. Parrott and the Respondent, John B. Abraham be awarded joint custody of the parties' minor child.
> 4. That John B. Abraham be awarded the legal right to claim the parties minor child as a tax exemption for all future years in regard to his income tax return. [sic]

On March 21, 2001, [D.D.A.] returned with his maternal grandmother to Wisconsin but, on April 9, 2001, returned to Montgomery County, Tennessee where father, mother and child resumed cohabitation. The family lived together until May 11, 2001, when Jenny Parrott took [D.D.A.] and returned to Wisconsin. The order executed by all parties and attorneys on March 19, 2001, was not entered by the Juvenile Court of Montgomery County until April 26, 2001.

On June 8, 2001, John Abraham filed a petition in the Juvenile Court of Montgomery County asserting first the April 26, 2001 order granting the parties joint custody of [D.D.A.], then reciting the facts of March, April and May, 2001, and seeking to be named residential and custodial parent of [D.D.A.].

On October 24, 2001, by special appearance, Jenny Parrott asserted that the Juvenile Court of Montgomery County, Tennessee was without subject matter jurisdiction to determine custody under Tennessee Code Annotated section 36-6-216.

The case was heard on July 25, 2001, after which an order was entered on February 28, 2002, holding:

> This matter came on for trial based upon the Petition filed by John B. Abraham. Before the trial was undertaken, a Motion made on behalf of Jenny Parrott was heard.
> To resolve this Motion, the Court entertained the testimony of Jenny Parrott and John B. Abraham regarding jurisdictional issues. The court affirmatively found that the minor child, [D.D.A.], first came to the State of Tennessee on or about March 16, 2001 and stayed for approximately 3 days. Thereafter, the child came to the State of Tennessee with his mother on or about April 17th, 2001, and stayed until May 11, 2001. The Court finds, based upon the testimony provided, that the Order entered in this matter, on or about April 26, 2001, was entered at a time when this Court, based upon the Jurisdictional statutes of the State of Tennessee, did not have subject matter jurisdiction of this case. Specifically, Tennessee was not the home state of the minor child at the time that the April 26, 2001 Order was entered.
> The Court entertained the vigorous argument of Counsel for Mr. Abraham and Ms. Parrott. However, the Court finds, based on Tennessee's jurisdictional statutes that the Court does not have subject matter jurisdiction over this case.
> As a result of the foregoing, it is therefore;
> ORDERED, ADJUDGED AND DECREED, that the Order entered by this Court April 26, 2001, granting Joint Custody is vacated. Tennessee was not the home state at the time that Order was entered. Based upon the record before the Court, Wisconsin was the home state and the proper state to make determinations regarding custody and visitation.

From this order, John Abraham timely appealed.

The trial court did not specifically address the determinative question of whether or not the actions of Jenny Parrott, in returning to Tennessee on March 16, 2001, with [D.D.A.], and cohabiting as a family with John Abraham and [D.D.A.] in Montgomery County, Tennessee, from March 16, 2001 through May 11, 2001, effected a change of domicile for [D.D.A.] from Wisconsin to Tennessee. If such actions did not constitute a change of domicile for [D.D.A.] then the trial court judgment is correct, and Wisconsin is still [D.D.A.]'s "home state" under the provisions of Tennessee Code Annotated section 36-6-205(7) and section 36-6-216(a)(1). If, however, by Jenny

Parrott's actions effected a change of domicile for [D.D.A.] from Wisconsin to Tennessee, then Wisconsin is no longer the home state of [D.D.A.], and under the provisions of Tennessee Code Annotated section 36-6-216(a)(4), Tennessee has subject matter jurisdiction of the case.

In order for Wisconsin to be [D.D.A.]'s "home state," he must have lived with Jenny Parrott in Wisconsin ". . . for at least six (6) consecutive months <u>immediately before</u> the commencement of a child custody proceeding." T.C.A. § 36-6-205(7)(emphasis added).

The petition in issue was not filed until June 8, 2001. If the actions of Jenny Parrott effected a change of domicile for [D.D.A.], he did not live with her in Wisconsin for the six (6) consecutive months immediately preceding the filing of the petition.[1]

If a change of domicile has been effected from Wisconsin to Tennessee prior to the filing of the petition, [D.D.A.] has no "home state" under Tennessee Code Annotated section 36-6-216(a)(1)(2) and (3). In such case, subject matter jurisdiction is properly vested in the Juvenile Court of Montgomery County pursuant to Tennessee Code Annotated section 36-6-216(a)(4) since: "No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1),(2), or (3)."[2]

While the trial court, in its order of February 28, 2002, did not specifically make any finding of fact on the domicile question, a finding adverse to a change of domicile is implicit in the finding that Wisconsin is the "home state" of [D.D.A.]. Therefore, the decisive question is posed: "Where lies the preponderance of the evidence on the question of domicile?"

This Supreme Court of the United States has held:

> That we are dealing with a uniform federal rather than a state definition does not, of course, prevent us from drawing on general state-law principles to determine "the ordinary meaning of the words used." Well-settled state law can inform our understanding of what Congress had in mind when it employed a term it did not define. Accordingly, we find it helpful to borrow established common-law principles of domicile to the extent that they are not inconsistent with the objectives of the congressional scheme.

---

[1] It would seem to be the legislative intent that the term "lived with" in T.C.A. 36-6-205(7) is synonomous with domicile rather than residence since the last sentence of that Code section provides: "A period of temporary absence of any of the mentioned persons is part of the period;"

[2] To hold otherwise would lead to absurd consequences. A divorced mother living in Massachusetts with a child for six months would make Massachusetts the "home state" of the child. Father living in Tennessee moves to California. They decide to reconcile and mother moves with child to California and cohabits with father and child as a family. Custody problem arises and the parties must return to Massachusetts to adjudicate it.

"Domicile" is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted. See generally Restatement §§ 11-23; R. Leflar, L. McDougal, & R. Felix, American Conflicts Law 17-38 (4th ed.1986); R. Weintraub, Commentary on the Conflict of Laws 12-24 (2d ed. 1980). "Domicile" is not necessarily synonymous with "residence," *Perri v. Kisselbach*, 34 N.J. 84, 87, 167 A.2d 377, 379 (1961), and one can reside in one place but be domiciled in another, *District of Columbia v. Murphy*, 314 U.S. 441, 86 L.Ed. 329, 62 S.Ct. 303 (1941); *In re Estate of Jones*, 192 Iowa 78, 80, 182 N.W. 227, 228 (1921). For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there. *Texas v. Florida*, 306 U.S. 398, 424, 83 L.Ed. 817, 59 S.Ct. 563, 121 A.L.R. 1179 (1939). One acquires a "domicile of origin" at birth, and that domicile continues until a new one (a "domicile of choice") is acquired. *Jones, supra*, at 81, 182 N.W., 15 228; *In re Estate of Moore*, 68 Wash 2d 792, 796, 415 P.2d 643, 656 (1966). Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents. *Yarborough v. Yarborough*, 290 US 202, 211, 78 L Ed 269, 54 S.Ct. 181, 90 ALR 924 (1933). In the case of an illegitimate child, that has traditionally meant the domicile of its mother. *Kowalski v. Wojtkowski*, 19 NJ 247, 258, 116 A.2d 6, 12 (1955); *Moore, supra*, at 796, 415 P.2d, at 656; Restatement § 14(2), § 22, Comment c; 25 Am Jur 2d, Domicil § 69 (1966).

*Mississippi Choctaw v. Holyfield*, 490 U.S. 30, 47-48; 104 L.Ed.2d 29, 46; 109 S.Ct. 1597 (1989).

". . .To change domicile or legal residence, a person must; (1) actually change his or her residence to a new place; (2) intend to abandon his or her old domicile; and (3) intend to establish a new domicile at the new residence." *In re: Conservatorship of Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct. App. 1995). A minor child lacks the capacity to change his own domicile. *See McElhaney v. Chipman*, 647 S.W.2d 643 (Tenn. Ct. App. 1982); *see also Allen v. Thompson*, 30 Tenn. 536, 537 (1851). The domicile of a minor child residing with its mother follows the domicile of the mother. *Burden v. Burden*, 44 Tenn. App. 312, 313 S.W.2d 566 (1958). Domicile of a minor child is controlled by that of the person charged with his legal care and custody. *McElhaney,* 647 S.W.2d at 644 (Tenn. Ct. App. 1982). Whenever the domicile of the parent having custody changes, the minor's domicile necessarily follows it. *Thompson v. Mississippi Farm Bureau Mutual Insurance Co.*, 602 So.2d 855 (Miss. 1992); 25 Am.Jur.2d "Domicile" sec. 41. In general, it is the intention of the person at the time of arrival at the new residence which is important. *Gallagher v. Philadelphia Transport Co.*, 185 F.2d 543 (C.A. 3 Penn. 1950). As long as a physical presence in the locality and an intention to acquire a domicile there occur concurrently, the length of residence is not a factor in the establishment of domicile. *Perito v. Perito*, 756 P.2d 895 (Alaska 1988); *Irvin v. Irvin*, 322 P.2d 794 (Kan. 1958); *Smith v. Smith*, 289 P.2d 1086, 54 A.L.R.2d 893 (Or. 1955). When both parents and the child leave the "home state" it loses its status in favor of such new domicile as is established for the child. *Ex parte Carstens*, 728 So.2d 128, 133 (Ala. 1998).

The record in this case leaves no doubt that Jenny Parrott moved from Wisconsin to Tennessee and established her residence and the residence of [D.D.A.] in the home of John Abraham and there remained in cohabitation from March 16, 2001 until May 11, 2001 with an intervening return of [D.D.A.] to Wisconsin from March 21, 2001 until his return to the home in Clarksville on April 9, 2001. The decisive issue then turns on her intent when she made such move. Her ex post facto declarations to the contrary notwithstanding, the preponderance of the evidence establishes that she intended to change her domicile from Wisconsin to Tennessee. At the time she moved from Wisconsin to Tennessee on or about March 16, 2001, she affirmatively acted to cancel her public assistance allowance in the State of Wisconsin. Mr. Abraham sent her a total of $3,000 to fix her car and pay her attorney to gain relief from the probation violation charges pending against her in Montgomery County, Tennessee. She packed her bags and moved in with Mr. Abraham. She signed the consent order of April 26, 2001, agreeing that Mr. Abraham would have joint custody of [D.D.A.]. She allowed Mr. Abraham to purchase furniture for [D.D.A.] together with clothing. Of overriding significance, she applied for and received a Tennessee driver's license upon her arrival in March 2001. Such has been held to be evidence of an intent to establish domicile. *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48 (1st Cir. Mass. 1992); *Manthey v. Commissioner of Revenue*, 468 N.W.2d 548 (Minn. 1991); *O'Rourke v. Utah State Commissioner*, 830 P.2d 230, 232 (Utah 1992).

> . . . [I]t is the intention at the time of arrival which is important. The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long as the subsequent doubt or circumstance of leaving does not indicate that the intention to make the place the plaintiff's home never existed. *Shoaf v. Fitzpatrick*, 6 Cir. 1939, 104 F.2d 290 certiorari denied 308 US 620, 60 S.Ct. 295, 84 L.Ed.1518; *Stockyards National Bank v. Bragg*, 8 Cir. 1928, 293 F. 879.

*Gallagher v. Philadelphia Transport Co.*, 185 F.2d 543, 546 (3d Cir. Pa. 1950).

The preponderance of the evidence establishes that Jenny Parrott moved to Tennessee and established her residence with John Abraham in Montgomery County, Tennessee with the intention to change her domicile. The domicile of [D.D.A.] changed with her change of domicile and is established in Tennessee. [D.D.A.] has no "home state" within the meaning of Tennessee Code Annotated section 36-6-216, and subject matter jurisdiction concerning his custody is properly vested in the Juvenile Court of Montgomery County, Tennessee, pursuant to Tennessee Code Annotated section 36-6-216(a)(4).

The judgment of the trial court is reversed and the cause is remanded to the Juvenile Court of Montgomery County, Tennessee for consideration of the merits of the petition of John Abraham filed June 8, 2001 and such other matters as may be put in issue by subsequent pleadings.

Costs of cause are assessed to the appellant.

_____
WILLIAM B. CAIN, JUDGE