IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2024 Session

**IN RE CONSERVATORSHIP OF CHARLES C. ROWE**

**Appeal from the Probate and Family Court for Cumberland County
No. 2023-PF-9146   Amanda Worley, Judge**

_____

**No. E2023-01236-COA-R3-CV**
_____

The Probate and Family Court for Cumberland County ("the Trial Court") granted the petition of Janice Peters-Rowe ("Petitioner") for a conservatorship over her husband, Charles Rowe ("Respondent"). Respondent's daughter from a previous marriage, Dawn Rowe ("Daughter"), filed an intervening petition. Daughter claimed that the Trial Court lacked jurisdiction, arguing that Respondent had lived his entire life in New York until recently and that Respondent had not established residency in Tennessee. The Trial Court found that it had jurisdiction over the matter; that the marriage between Petitioner and Respondent was valid, giving Petitioner priority for appointment as conservator; and that it was in Respondent's best interest that Petitioner be appointed as his conservator. Daughter appealed. Given that Respondent did not have the mental capacity to change his domicile at the time of his arrival in Tennessee, we conclude that the Trial Court did not have subject matter jurisdiction over this matter and accordingly vacate the Trial Court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court
Vacated; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Ben H. Houston, II and Carin C. Brio, Knoxville, Tennessee, for the appellant, Dawn Rowe.

Jonathan R. Hamby, Crossville, Tennessee, for the appellee, Janice Peters-Rowe.

Sherrill Rhea, Crossville, Tennessee, for the appellee, Charles C. Rowe.

# OPINION

## Background

In January 2023, Petitioner filed in the Trial Court a petition for a conservatorship over her husband, Respondent, who then was 76-years old. Petitioner alleged that Respondent and she married in 1996, and that the couple had moved to Tennessee from New York in August 2022. She further alleged that she was Respondent's duly appointed attorney-in-fact pursuant to a power of attorney and that Respondent was estranged from his children, Daughter and Charles Rowe, Jr. ("Son"). Petitioner explained that Respondent had been diagnosed with Alzheimer's disease and dementia and that he had been evaluated by a psychologist and doctor in New York. Petitioner alleged that Respondent needed a conservator of his person and property and requested that the Trial Court appoint her as his conservator. A week later, the Trial Court appointed Sherrill Rhea as Respondent's guardian *ad litem* ("the GAL").

Prior to Petitioner's initiation of this action, Daughter had filed a petition for conservatorship over Respondent in New York in October 2022. Daughter filed a motion to intervene and a motion to continue in the Trial Court. She alleged that her petition for conservatorship had been pending in New York at the time Petitioner filed her action in the Trial Court. She further alleged that the New York court still retained jurisdiction over the matter, that a "Certified Court Evaluator" in New York had recommended that Daughter be appointed as conservator for Respondent, and that Respondent had not established residency in Tennessee when Petitioner filed her petition. She withdrew her New York petition after a virtual hearing on January 12, 2023, when the "Court Evaluator made a different statement to the Court regarding jurisdiction." The Trial Court granted Daughter's motion to intervene.

Daughter filed a counter-petition and a response to the petition. She denied that Petitioner was Respondent's lawful wife and alleged that Respondent never divorced his first wife, Irene Rowe ("First Wife"), Daughter's mother. She admitted that Petitioner "moved" Respondent to Tennessee in August 2022, adding that Petitioner moved him to Tennessee without informing his children while he was "rehabbing from surgery in a rehabilitation center in New York." She further denied any estrangement between Respondent and herself and that Petitioner was Respondent's duly appointed attorney-in-fact. Given the alleged invalidity of Petitioner's marriage to Respondent, Daughter claimed that she had statutory priority to be appointed Respondent's conservator. Daughter further claimed that Respondent was afraid of Petitioner and had not wanted to move to Tennessee. She also alleged that Petitioner told Son that "there was a life insurance policy taken out in 2007 that was supposed to go at least in part to the COUNTER Petitioner and [Son]" and that Son could "kiss that goodbye" in August 2022.

In March 2023, the GAL filed her report, reflecting that she discussed Daughter's concerns with Respondent. According to the GAL, Respondent responded as follows:

> He shrugged me off and said that he wished his kids would leave him alone. He is with his wife and that is where he wants to be. I met with the Respondent privately on numerous occasions during this case. The Respondent always had the same reaction when I talked to him about Dawn and Christopher [R]owe. The Respondent wishes for this lawsuit to be over and wants to be left alone.

The GAL further found that Respondent showed "absolutely no fear and seems comfortable and at ease around" Petitioner. Despite Son's accusations that Petitioner had drained Respondent's bank accounts, the GAL reviewed Respondent's accounts and concluded that there was "nothing out of the ordinary in terms of expenditures or unusual transactions."

The GAL cited a medical examination report by Maria Stubbs, M.D., in which Dr. Stubbs concluded that Respondent's mental condition was "poor and that there was no rehabilitation plan feasible." The GAL also reported that Respondent had another "seizure/stroke" in January 2023. The GAL concluded that Respondent lacked the "mental capacity to make sound judgments concerning his finances, business matters, and health related decisions," was in need of a conservator, and that Petitioner would be an appropriate conservator.

Dr. Stubbs's medical examination report was entered into evidence as an exhibit at trial. Dr. Stubbs's report reflected that she believed Respondent to be in poor mental condition and to be suffering from Alzheimer's dementia and multi-infarct dementia. Dr. Stubbs indicated that, in her professional opinion, Respondent needed a fiduciary for his physical well-being, fiduciary to handle his financial affairs, fiduciary to consent to medical treatment, and fiduciary to consent to relocation.

Trial was held on March 17 and June 12, 2023. At trial, Petitioner; Daughter; First Wife; and Richard Calcagno, a process server, testified. Petitioner testified about Respondent's and Daughter's relationship. From her perspective, Daughter never visited Respondent and was interested only in his money. She also explained that they moved to Tennessee because Respondent was a retired corrections officer and Petitioner feared retaliation from released inmates. She also complained of high housing costs in New York. She indicated that Respondent wanted to move as well. They visited friends from church in Crossville, Tennessee in June 2022 and decided to move there.

As for Respondent's Alzheimer's and dementia symptoms, Petitioner explained that she began noticing his symptoms in 2019 and that he was diagnosed in 2020. She explained that he had suffered a stroke in August 2022 while they were still living in New

York.  She further attributed the stroke to his failure to take his medication, testifying: "I would give him his medicine.  And then I'd turn around to maybe wash the dishes or do something and he wasn't taking it.  He was throwing the medicine away and I didn't know it."  She further testified that Respondent is "cognizant of things" and "not totally like in La La land," but that he cannot "really put together all of what's going on."  When asked whether Respondent was "more cognizant in August" than he was at the time of trial, Petitioner responded: "No. . . .  He's about the same as he was then."  They moved to Tennessee on August 25 or 26 of 2022.

With respect to the history of her relationship with Respondent, Petitioner testified that their relationship began in 1976 while he was married to his first wife, unbeknownst to Petitioner.  Petitioner discovered Respondent's marriage and ended her relationship with him in 1986.  They rekindled their relationship after Respondent informed Petitioner of his divorce from First Wife, and they married in 1996.

Daughter contested much of Petitioner's testimony.  She denied that she was ever estranged from Respondent but acknowledged that there were periods of time where they did not communicate.  She also claimed that she never asked for or received any money from Respondent.  She further testified that Petitioner did not want Daughter and Respondent to have a relationship, and that Respondent tried to keep his relationship with Daughter a secret from Petitioner.  She also testified that she believed Petitioner was abusing Respondent after she witnessed Petitioner poke him in the chest while he was in the hospital.  According to Daughter, Petitioner moved Respondent straight to Tennessee from the nursing home where he was recovering from his stroke.  In addition to her testimony, Daughter's counsel introduced multiple recordings of conversations between Daughter and Respondent.

Mr. Calcagno testified that he was a retired FBI agent and had been hired by Daughter's attorney in New York to serve Respondent with "some court papers."  Mr. Calcagno detailed his interaction with Respondent and Petitioner at their home in Tennessee.  At the door, Respondent smiled and moved to accept the papers from Mr. Calcagno, but Petitioner became "very angry" and said, "No, no, no" and "Don't take anything."  Respondent's demeanor then changed.  Mr. Calcagno testified that Respondent then lowered his head and appeared intimidated.  After Mr. Calcagno left the papers at Petitioner's feet, Petitioner told Mr. Calcagno "to go to hell" and take his mother with him.

First Wife testified and was adamant that Respondent and she never divorced, although they had been separated since her move to Florida in 1996.  She also stated that at one point Respondent and she renewed their vows in Florida.  She could not remember when they renewed their vows but indicated that it was thirty years ago.  She also testified that a New York court had ordered Respondent to pay her child support.  Daughter testified that Respondent had told her that First Wife had initiated and obtained

the divorce. Daughter introduced as exhibits five certified copies of "Record of No Divorce" from the five boroughs of New York City, reflecting that there was no record of divorce for Respondent and First Wife.

On August 10, 2023, the Trial Court entered a judgment appointing Petitioner as conservator over Respondent and appointing Daughter as a standby conservator. The Trial Court determined that it had subject matter jurisdiction over the matter, explaining the following:

> Testimony from Ms. Janice Rowe was that she began to notice issues with Mr. Rowe in 2018-2019. In 2020 he was diagnosed with Alzheimer's Disease. She indicated that he is on medication to slow the progression and it has worked well. She indicates that he does have trouble with his memory and therefore she is responsible for making sure he takes all of his required medication for his host of physical ailments. She also indicates Mr. Rowe was a "techie" but now has problems with his iPhone because he forgets his passcode. The Rowe's visited Tennessee in June 2022 prior to their move in late August of 2022. It is during this June 2022 trip it is alleged that the intent to move to Tennessee was formed. Even prior to the June trip to Tennessee, Ms. Rowe testified that they intended to move from New York due to various reasons including crime and high rent prices. She testified that they looked at other States, but again due to high cost of living, they decided to move to Tennessee. Unlike [*In re Conservatorship of*] Clayton [, 914 S.W.2d 84 (Tenn. Ct. App. 1995)], there was never a prior finding that Mr. Rowe was incompetent to either manage his property or person. The Court knows of no way, absent specific medical proof of Mr. Rowe's incompetency from before the June Tennessee visit, or compelling testimony of his alleged incompetency prior to June 2022, that it can look back in time and decide if Mr. Rowe was incompetent at the time either intent to move was formed or when the move to Tennessee actually occurred. A diagnosis of Alzheimer's certainly does not equate to incompetency at the time of diagnosis. The only medical proof the court has before it is the January 17, 2023 report of Dr. Maria Stubbs finding Alzheimer's dementia and that the respondent is in poor mental health. . . . Absent prior medical proof or Court findings of incompetency this Court finds that Mr. Rowe had the ability to change his domicile from New York to Tennessee and therefore Cumberland County is the "county of residence" for the purpose of Tenn. Code Ann. §34-13-101(b).

The Trial Court further found that Respondent was either partially or fully disabled and in need of assistance. With respect to priority of appointment, the Trial Court found that Petitioner took priority because she was Respondent's wife.[1] The Trial Court determined that Daughter had not proven by cogent and convincing evidence that Respondent's and Petitioner's marriage was invalid. The Trial Court found First Wife credible but noted that she had struggled with her memory. Although the Trial Court acknowledged the five copies of "Record of No Divorce" from New York, the Trial Court found that it was possible that First Wife divorced Respondent in Florida, given that she had lived there for the past 26 years.

The Trial Court further determined that it was in Respondent's best interest that Petitioner be appointed his conservator, noting that the GAL had reported no concerns with Petitioner or any unusual transactions to indicate some ulterior financial motive on her part. The Trial Court also found that Petitioner had an impressive grasp of Respondent's medical conditions and medications. The Trial Court appointed Daughter as a standby conservator, finding her to be a credible witness who clearly loved Respondent. The Trial Court taxed the costs of the cause, including Petitioner's attorney's fees and the GAL fees against the property of the Respondent. The Trial Court taxed Daughter her own attorney's fees incurred.

Daughter filed a notice of appeal. Thereafter, Petitioner filed a motion to alter or amend the judgment, asking the Trial Court to instead tax costs to Daughter and to reconsider appointing Daughter as a standby conservator. Daughter also filed a motion to alter or amend, asking the Trial Court to reconsider its finding of subject matter jurisdiction and, alternatively, its appointment of Petitioner as conservator. She also asked the Trial Court to tax all costs, including her attorney's fees, to Petitioner, as well as grant her the right to have contact and visitation with Respondent.

As reflected in an order entered in October 2023, the Trial Court chose not to alter or amend the substance of its judgment. However, the Trial Court did award Daughter weekly phone calls and monthly in-person visits with Respondent, hospital visits, and medical updates. The Trial Court also decided to split the GAL's fees evenly between Daughter and Petitioner.

---

[1] Petitioner's power of attorney for Respondent was never entered into evidence, and the Trial Court accordingly did not consider the writing as giving Petitioner priority pursuant to Tenn. Code Ann. § 34-3-103 (West eff. July 1, 2013) ("Subject to the court's determination of what is in the best interests of the person with a disability, the court shall consider the following persons in the order listed for appointment of the conservator: (1) The person or persons designated in a writing signed by the alleged person with a disability[.]"

**Discussion**

Although not stated exactly as such, Daughter raises the following issues: (1) whether the Trial Court erred by finding that it had subject matter jurisdiction, (2) whether the Trial Court erred by finding that Petitioner had statutory priority over Daughter, (3) whether the Trial Court erred by finding that appointing Petitioner as conservator was in Respondent's best interest, and (4) whether the Trial Court erred by taxing costs equally to Daughter and Petitioner. Petitioner raises the following additional issues: (5) whether the Trial Court should have taxed all costs to Daughter and (6) whether the Trial Court erred by appointing Daughter as standby conservator.[2] Having reviewed the evidence presented at trial, we conclude that the first issue is dispositive, that Respondent lacked the mental capacity to change his domicile, and that the Trial Court, accordingly, lacked subject matter jurisdiction.

"Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). The statute governing where an action for conservatorship may be brought, Tenn. Code Ann. § 34-3-101 (West eff. Apr. 13, 2021), provides in relevant part:

> (a) Actions for the appointment of a conservator may be brought in a court exercising probate jurisdiction or any other court of record of any county in which there is venue.
>
> (b)(1) An action for the appointment of a conservator shall be brought in the county of residence of the alleged person with a disability.

In construing this statute, this Court has explained:

> "Subject matter jurisdiction refers to a court's authority to adjudicate a particular case or controversy and 'depends on the nature of the cause of action and the relief sought.' " *In re Baby*, 447 S.W.3d 807, 837 (Tenn. 2014) (quoting *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn.

---

[2] Although neither party raised this as an issue, this Court asked the parties to file supplemental briefs to address (1) whether the holder of a power of attorney has authority to change the principal's domicile and (2) whether there was sufficient evidence presented to the Trial Court of a power of attorney sufficiently broad enough to vest Petitioner with the authority to change Respondent's domicile. After reviewing the supplemental briefs and the record, we conclude that the power of attorney was never admitted into evidence as an exhibit, and we have no way of knowing what powers it grants to Petitioner. Without the power of attorney and its terms before us, we cannot determine whether Respondent ceded to Petitioner the power to change his domicile on his behalf.

2012)).   "Subject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)).   Parties cannot waive subject matter jurisdiction, nor can they confer it on a trial or appellate court.   *See In re Baby*, 447 S.W.3d at 837; *In re Estate of Trigg*, 368 S.W.3d at 489.   Orders and judgments entered by courts without subject matter jurisdiction are void.   *In re Estate of Trigg*, 368 S.W.3d at 489.

In conservatorship proceedings, venue is treated as jurisdictional.   *In re Conservatorship of Ackerman*, 280 S.W.3d 206, 210 (Tenn. Ct. App. 2008) ("*In re Ackerman*").   Tennessee Code Annotated section 34-3-101(b) states, "[a]n action for the appointment of a conservator *shall* be brought in the county of residence of the alleged person with a disability."   (Emphasis added).   "Accordingly, . . . trial courts should not exercise jurisdiction over the person or property of [a person with a disability] who are not residents of their geographic area."   *In re Ackerman*, 280 S.W.3d at 210 (citing *In re Conservatorship of Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct. App. 1995) ("*In re Clayton*")).   Previously, this Court stated that under section 34-3-101(b), the term "county of residence" means the person's legal residence or domicile.   *In re Clayton*, 914 S.W.2d at 91.   Meaning, whether a trial court has jurisdiction to hear a petition to appoint a conservator depends on the domicile of the person who is the subject of the petition.

The difference between a person's residence and domicile may sometimes be subtle but it is crucial for purposes of determining subject matter jurisdiction.   "[A] person may have more than one residence but may have only one domicile or legal residence."   *In re Ackerman*, 280 S.W.3d at 210 (citing *Bearman v. Camatsos*, 385 S.W.2d 91, 93 (Tenn. 1964)).   "A person cannot acquire a new domicile or legal residence without first abandoning another."   *Id.* (citing *McElhaney v. Chipman*, 647 S.W.2d 643, 644 (Tenn. Ct. App. 1982)).   "To change domicile or legal residence, a person must: (1) actually change his or her residence to a new place; (2) intend to abandon his or her old domicile; and (3) intend to establish a new domicile at the new residence."   *Id.* (citing *Denny v. Sumner Cty.*, 184 S.W. 14, 16 (Tenn. 2016)).

*In re Conservatorship of Tapp*, No. W2020-00216-COA-R3-CV, 2021 WL 225684, at *2-3 (Tenn. Ct. App. Jan. 22, 2021).   Therefore, the person who is the subject of the conservatorship petition must be domiciled in the trial court's county in order for a trial court to have subject matter jurisdiction to consider the petition.

Moreover, "[a] person who is mentally incompetent cannot voluntarily change domicile or legal residence because he or she does not have the requisite intent either to abandon their old domicile or to acquire a new one." *In re Conservatorship of Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct. App. 1995). Additionally, "it is the intention of the person at the time of arrival at the new residence which is important." *Parrott v. Abraham*, 146 S.W.3d 623, 628 (Tenn. Ct. App. 2003). "As long as a physical presence in the locality and an intention to acquire a domicile there occur concurrently, the length of residence is not a factor in the establishment of domicile." *Id.*

The plaintiff bears the burden of proving facts sufficient to establish the trial court's jurisdiction. *Staats v. McKinnon*, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006). A petitioner seeking the appointment of a conservator must prove by clear and convincing evidence that the person subject to the petition is a "disabled person." *In re Conservatorship of Groves*, 109 S.W.3d 317, 330 (Tenn. Ct. App. 2000). A "[p]erson with a disability" is defined as "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(14) (West eff. May 10, 2019).

In the present case, for the Trial Court to have had subject matter jurisdiction over the petition for conservatorship, Respondent would have had to abandon his former domicile in New York and established his new domicile in Cumberland County, Tennessee. However, based upon the evidence presented at trial, we are unable to say that Respondent was mentally competent to form the intent to change his domicile at the time of his arrival in Tennessee in August 2022. The most compelling evidence on this issue was when asked if Respondent was more cognizant in August 2022 than he was at the time of trial, Petitioner stated, "No. . . . He's about the same as he was then." Petitioner's testimony also established that Respondent needed someone not only to administer his medicine to him, but also ensure that he actually took his medicine, given that he had been throwing his medicine away. Furthermore, Dr. Stubbs's professional opinion was that Respondent needed a fiduciary to "consent to relocation" as of January 2023, which was before the trial in March and June of 2023. It was Petitioner's testimony that Respondent was no more mentally competent in August 2022 than he was at the time of trial.

Neither Petitioner nor Daughter disputed that Respondent was in need of a conservator at the time of trial based upon his Alzheimer's disease, dementia, and stroke. Based on Petitioner's testimony and Dr. Stubbs's opinion, we can only conclude that Respondent also was in need of a conservator in August 2022 when Petitioner and Respondent moved to Tennessee, given that he was in "about the same" condition then as he was at trial. Again, "[a] person who is mentally incompetent cannot voluntarily change domicile or legal residence because he or she does not have the requisite intent

either to abandon their old domicile or to acquire a new one." *Clayton*, 914 S.W.2d at 89. Given that Respondent's mental capacity at the time of his move to Tennessee in August 2022 was the same as it was at the time of trial, at which time it was undisputed that he was mentally incompetent to the degree that he required a conservator and needed a "[f]iduciary to consent to relocation," we are unable to say that he was of sufficient mental competency to change his domicile in August 2022.

The Trial Court found that Respondent had formed the intent to change his domicile in June 2022 while visiting Tennessee with Petitioner and that this intent was sufficient to effectuate the change in his domicile in August 2022, despite his intervening stroke in July or August 2022 and the fact that they did not move to Tennessee until some two months after their visit. Petitioner, likewise, argues on appeal that Respondent formed the intent to change his domicile in June 2022. Nevertheless, this Court has previously held that "it is the intention of the person <u>at the time of arrival</u> at the new residence which is important" and that "physical presence in the locality and an intention to acquire a domicile there" must "occur <u>concurrently</u>". *Parrott*, 146 S.W.3d at 628 (emphasis added). Based on all the evidence presented to the Trial Court, including her own testimony, Petitioner failed to establish that Respondent was of sufficient mental capacity to form the intent to change his domicile at the time of his arrival in Tennessee in August 2022, and therefore, the Trial Court did not have subject matter jurisdiction over this matter.

Both Petitioner and Daughter also appeal the Trial Court's division of GAL fees between them. Daughter asks that this Court reverse the Trial Court's 50/50 division of GAL fees and "instruct the trial court on remand to tax all costs of this cause, including but not limited to the Petitioner's attorney's fees, the Guardian ad Litem's fees, and the Intervening Petitioner's attorney's fees, to the original Petitioner." Daughter argues that the Trial Court should have taxed all costs to Petitioner because Daughter "intervened in this matter in a way that was beneficial to her father" and the "clear evidence of abuse perpetrated by" Petitioner. Petitioner argues that "the costs and fees of the Guardian ad Litem should be borne by and taxed to" Daughter because the Trial Court found that Daughter's appointment as conservator would not be in Respondent's best interest.

In partially granting Petitioner's motion to alter or amend the judgment and amending its assessment of the GAL fees against Respondent's property, the Trial Court found the following:

> [Petitioner's counsel] makes a good argument that the guardian ad litem fees were larger than guardian a[d] litem fees in normal conservatorship cases due to the truly complex nature of this proceeding. We had a lot of court appearance. [The GAL] spent a lot of time working on this case, as reflected in the fee. And a lot of that is due to the intervening petition being filed. Certainly, I don't think [Daughter] filed

this intervening petition for any other reason than she loves her father and was hoping to be the conservator; not for any ill purpose. But I think it would be appropriate to alter the distribution of those Guardian ad Litem Fees, where those would be distributed 50/50 between [Daughter] an[d] [Petitioner]. Accordingly, it is Ordered, Adjudged and Decreed that this Court's order of August 10, 2023 is amended to provide that Guardian ad Litem is awarded a fee in the amount of five thousand five hundred and fifty-dollars and seventy-three cents ($ 5,550.73), and those fees shall be evenly split by the Petitioner . . . and the Intervening Petitioner, [Daughter].

The Trial Court did not amend its decision that Daughter should pay her own attorney's fees.

The statute governing the assessment of costs in conservatorship proceedings, Tenn. Code Ann. § 34-1-114 (West eff. May 4, 2021), provides in relevant part:

(a) The costs of the proceedings, which are the court costs, the guardian ad litem fee and expenses incurred by the guardian ad litem in conducting the required investigations, the required medical examination costs, and the attorney's fee for the petitioner, may, in the court's discretion, be charged against the property of the respondent to the extent the respondent's property exceeds the supplemental security income eligibility limit, or to the petitioner or any other party, or partially to any one or more of them as determined in the court's discretion. In exercising its discretion to charge some or all of the costs against the respondent's property, the fact a conservator is appointed or would have been appointed but for an event beyond the petitioner's control is to be given special consideration. The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court. If a fiduciary is cited for failure to file an inventory or accounting, the costs incurred in citing the fiduciary, in the discretion of the court, may be charged to and collected from the cited fiduciary.

(b) If the principal purpose for bringing the petition is to benefit the petitioner and there would otherwise be little, if any, need for the appointment of a fiduciary, the costs of the proceedings may be assessed against the petitioner, in the discretion of the court.

(Emphasis added). This Court previously explained:

In 2013, the General Assembly amended this statute, deleting the former version in its entirety and rewriting the statute to, among other things, provide the trial court a greater measure of discretion in assessing guardian

- 11 -

ad litem fees.  As can be seen from the plain language of the statute, it clearly accords the trial court discretion to award the fees and expenses of the guardian ad litem against the petitioner.

*In re Conservatorship of McQuinn*, No. E2013-02790-COA-R3-CV, 2015 WL 1517918, at \*7 (Tenn. Ct. App. Mar. 30, 2015) (footnote omitted).

With respect to Daughter's request that we remand for the Trial Court to tax her own attorney's fees to the Petitioner, we note that this Court has previously explained:

In considering claims for attorney's fees, Tennessee courts adhere to the "American Rule." *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (explaining that "[u]nder the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case."). In this action, it is undisputed that the conservatorship court had the authority, in its discretion, to grant attorney's fees to Petitioners based on Tennessee Code Annotated § 34-1-114 (2015)[.]

*In re Conservatorship of Hudson*, 578 S.W.3d 896, 906-07 (Tenn. Ct. App. 2018). Therefore, both the Trial Court's decisions related to GAL fees and attorney's fees were well within its discretion.

In this case, two competing petitioners vied for appointment as conservator for Respondent.  Tenn. Code Ann. § 34-1-114(a) clearly provides trial courts with the discretion to assess costs to a petitioner.  Daughter argues that the Trial Court should have taxed all costs, including GAL fees and her own attorney's fees to Petitioner, given that she presented evidence that Petitioner was abusing Respondent.  Although the Trial Court found Daughter to be a credible witness, it did not appear to credit Daughter's testimony regarding alleged abuse by Petitioner.  In addition, we decline to grant Petitioner's request to allocate all GAL fees to Daughter, given the Trial Court's determination that Daughter did not file her competing petition for any ill purpose, as well as the outcome of this appeal in favor of Daughter.  We discern no abuse of discretion in the Trial Court's assessment of GAL fees or attorney's fees.  Given the Trial Court's lack of subject matter jurisdiction, all other issues presented by Daughter and Petitioner are pretermitted as moot.

## Conclusion

For the foregoing reasons, we conclude that the Trial Court did not have subject matter jurisdiction to hear the petition for conservatorship. We accordingly vacate the Trial Court's final judgment appointing Petitioner as Respondent's conservator but affirm the Trial Court's allocation of costs. We remand to the Trial Court for further proceedings consistent with this Opinion, including the entry of an order dismissing this matter due to lack of subject matter jurisdiction and for the collection of costs below. Costs on appeal are assessed against the appellee, Janice Peters-Rowe.

_____
D. MICHAEL SWINEY, CHIEF JUDGE